UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| Gregory Taylor, individually and on behalf of all others similarly situated, | 3:22-cv-01949 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Procter & Gamble Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.  The Procter & Gamble Company ("Defendant") manufactures, labels, markets, and sells shave cream with aloe marketed as "Pure" under the Gillette brand ("Product").



2.   The label tells consumers the Product is "PURE," "Free From Alcohol, Dyes, Parabens, Sulfates," "0%," and made "With Aloe."

3.   Consumers understand "pure" consistent with its dictionary definitions, which define it as "not altered from an original or natural state," "not mixed with anything else" and "clean and not harmful in any way."

4.   In the context of a fabricated product like cosmetics, "pure" is understood to mean a final product consisting of ingredients which are "not [significantly] altered from [their] original or natural state" and are "not harmful in any way."

5.   Consumers value cosmetics labeled as "pure" because non-pure ingredients are associated with detrimental health and environmental effects.

6.   Sales of cosmetics based on pure ingredients and containing a significant absolute and relative amount of these ingredients are growing twice the rate of traditional cosmetics.

7.   According to Nielsen, whether cosmetics contain ingredients in their natural or at least, minimally processed states, is of high importance to half the public.

8.   Academic studies indicate that consumers will pay at least ten percent more for cosmetics with claims that state or imply the use of ingredients which have not significantly altered from their natural state through harsh processing and chemical reactions.

9.   Despite the front label promise the Product was "Pure," no less than ten of the fourteen ingredients are not pure, because they are significantly altered from their original or natural state.

INGREDIENTS: WATER, PALMITIC ACID, STEARIC ACID, GLYCERIN, COCONUT ACID, POTASSIUM HYDROXIDE, TRIETHANOLAMINE, FRAGRANCE, PHENOXYETHANOL, SODIUM HYDROXIDE, HYDROXYPROPYL METHYLCELLULOSE, MENTHOL, ALOE BARBADENSIS LEAF JUICE, MENTHA PIPERITA (PEPPERMINT) OIL.

**INGREDIENTS:** WATER, PALMITIC ACID, STEARIC ACID, GLYCERIN, COCONUT ACID, POTASSIUM HYDROXIDE, TRIETHANOLAMINE, FRAGRANCE, PHENOXYETHANOL, SODIUM HYDROXIDE, HYDROXYPROPYL METHYLCELLULOSE, MENTHOL, ALOE BARBADENSIS LEAF JUICE, MENTHA PIPERITA (PEPPERMINT) OIL.

10. The second and third most predominant ingredients after water, palmitic acid and stearic acid, are not pure because even though they are based on palm oil, this is significantly altered through saponification.

11. Saponification is a chemical reaction involving the conversion of fats, oils, and lipids by heat in the presence of aqueous alkali such as sodium hydroxide.

12. While glycerin, also known as glycerol, can be produced so that it is considered pure because it can be sourced from vegetable oils, it is manufactured through hydrogenolysis.

13. Hydrogenolysis is a chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen.

14. Because the global cosmetic industry uses millions of metric tons of glycerol per year, the only viable source for glycerin is as a byproduct in biodiesel production.

15. Though coconut acid can be prepared from simple coconuts, it is commercially produced by hydrolysis.

16. Hydrolysis is a chemical process in which a molecule of water is added to a substance causing it to split while one fragment of the target molecule gains a hydrogen ion.

17. Potassium hydroxide is not pure because it does not exist in a natural state.

18. Instead, it is produced through electrolysis of potassium chloride solution, which involves the passing of a direct electric current through an electrolyte producing a chemical reaction at the electrodes and decomposition of the subject material.

19. Potassium hydroxide is classified by federal regulations as a highly toxic and

hazardous synthetic compound that, even with short exposure, could cause serious temporary or residual injury.

20. Triethanolamine is not pure because it does not exist in a natural state.

21. It is made by reacting ethylene oxide, a petrochemical byproduct, with ammonia.

22. Triethanolamine cannot be considered pure because it has been shown to cause skin irritation, inflammation and other harmful effects on the body.

23. Fragrance often refers to an undisclosed mixture of molecules and compounds which in theory can be unaltered from their original state derived from natural sources.

24. In practice, many of the compounds in ingredients identified as fragrance are from synthetic sources.

25. Even where a fragrance is entirely from natural plant sources, it involves the use of harmful solvents for extraction and harsh processing to result in the final ingredient.

26. Though unaltered phenoxyethanol exists in green tea, the commercial version is not pure because it is made by treating phenol with ethylene oxide in an alkaline medium.

27. Phenoxyethanol cannot be considered pure because it is toxic to the kidneys, liver, and nervous system.

28. Sodium hydroxide is not pure because it does not exist in a natural state.

29. Instead, it is produced by the electrolysis of sodium chloride solution and by reacting calcium hydroxide with sodium carbonate.

30. Though cellulose can be considered pure, hydroxypropyl methylcellulose is not pure because it is made through synthetic modifications of cellulose.

31. Of the remaining three and least predominant ingredients – menthol, aloe barbadensis leaf juice (aloe vera), and mentha piperita (peppermint) oil – menthol can be pure or synthetic

depending on cost and usage.

32. Aloe vera and peppermint oil are considered pure ingredients because they are from the aloe vera and peppermint plants.

33. Despite the front label statement of "With Aloe," aloe is the thirteenth ingredient listed, and present in a small amount relative to all other ingredients.

34. The amount of aloe in the Product is negligible relative to the remaining ingredients.

35. Consumers expect shaving cream represented as made "With Aloe" to contain a non-*de minimis* amount of aloe ingredients.

36. Shaving creams that contain a significant amount and/or percentage of ingredients which have not been significantly altered from their original state and a non-negligible amount of aloe are available to consumers and are not technologically or commercially unfeasible.

37. Defendant makes other representations and omissions which are false and misleading.

38. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

39. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

40. Plaintiff paid more for the Product than he would had he known the truth, and he would have paid less or not purchased it.

41. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $10.95 for 6 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

42. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

43. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

44. The Product has been sold at thousands of locations and online, in the States covered by the classes Plaintiff seeks to represent, with the representations challenged here, for several years.

45. Plaintiff Gregory Taylor is a citizen of Illinois.

46. Defendant The Procter & Gamble Company is an Ohio corporation with a principal place of business in Cincinnati, Hamilton County, Ohio.

47. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

48. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here, in thousands of locations, in the states covered by Plaintiff's proposed classes.

49. The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

50. Venue is in this District because Plaintiff resides in this District and the actions giving rise to these claims occurred within this District.

51. This action should be assigned to the East St. Louis Division of this District because a substantial part of the events or omissions giving rise to these claims occurred in St. Clair County,

including Plaintiff's purchase, transactions and/or use of the Product and awareness and/or experiences of and with the issues described here.

## Parties

52. Plaintiff Gregory Taylor is a citizen of Dupo, St. Clair County, Illinois.

53. Defendant The Procter & Gamble Company is an Ohio corporation with a principal place of business in Cincinnati, Ohio, Hamilton County.

54. Defendant sells consumer packaged goods, such as shaving products.

55. The Gillette brand is the industry leader in shaving products for men.

56. Plaintiff is a part of the at least 50% of consumers who seek cosmetic products containing ingredients which are mostly unaltered or only minimally altered from their natural state, because he believes such ingredients are better for his body and the environment.

57. Plaintiff is like the many consumers who value cosmetics containing pure ingredients like aloe, and he believed the Product contained a non-negligible amount of aloe based on the front label claim of "With Aloe."

58. Plaintiff did not expect that of the fourteen ingredients, at least ten would be significantly altered from their original state and would have the potential to cause harm.

59. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, 1511 Camp Jackson Rd, Cahokia, IL 62206, between February 2022 and April 2022, and/or among other times.

60. Plaintiff believed and expected the Product was pure, which he understood to mean most or all of its ingredients were (1) not significantly altered from their natural state before they were combined to make the Product and/or (2) not capable of causing harm.

61. Plaintiff expected the Product would contain more aloe vera than it did based on the

promotion of this ingredient on the front label.

62. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

63. Plaintiff bought the Product at or exceeding the above-referenced price.

64. Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

65. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes and/or components.

66. Plaintiff paid more for the Product than he would have paid absent Defendant's false and misleading statements and omissions, and the Product was worth less.

67. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

68. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar shaving creams that are pure and made with natural ingredients and aloe, because he is unsure whether those representations are truthful.

Class Allegations

69. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in

the States of Wyoming, Kansas, Kentucky, West Virginia, Iowa, Utah, and Alaska who purchased the Product during the statutes of limitations for each cause of action alleged.

70. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

71. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

72. Plaintiff is an adequate representative because his interests do not conflict with other members.

73. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

74. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

75. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

76. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*</u>

(Consumer Protection Statute)

77. Plaintiff incorporates by reference all preceding paragraphs.

78. Plaintiff believed the Product (1) was pure, understood to mean most or all of its ingredients were (a) not significantly altered from their natural state before they were combined to make the Product and/or (b) not capable of causing harm, and (2) contained more than a negligible

amount of aloe ingredients.

79. Plaintiff relied on the representations and omissions which described the Product as "Pure" and "With Aloe."

80. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(Consumer Fraud Multi-State Class)

81. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

82. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

83. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

84. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

85. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is or may be appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

86. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it (1) was pure, understood to mean most or all

of its ingredients were (a) not significantly altered from their natural state before they were combined to make the Product and/or (b) not capable of causing harm, and (2) contained more than a negligible amount of aloe ingredients.

87. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

88. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

89. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it (1) was pure, understood to mean most or all of its ingredients were (a) not significantly altered from their natural state before they were combined to make the Product and/or (b) not capable of causing harm, and (2) contained more than a negligible amount of aloe ingredients.

90. Defendant's representations affirmed and promised the Product (1) was pure, understood to mean most or all of its ingredients were (a) not significantly altered from their natural state before they were combined to make the Product and/or (b) not capable of causing harm, and (2) contained more than a negligible amount of aloe ingredients.

91. Defendant described the Product so Plaintiff believed it (1) was pure, understood to mean most or all of its ingredients were (a) not significantly altered from their natural state before they were combined to make the Product and/or (b) not capable of causing harm, and (2) contained more than a negligible amount of aloe ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

92. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

93. This duty is based on Defendant's outsized role in the market for this type of Product, custodian of the world leader in men's shaving products Gillette.

94. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

95. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

96. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

97. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

98. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it (1) was pure, understood to mean most or all of its ingredients were (a) not significantly altered from their natural state before they were combined to make the Product and/or (b) not capable of causing harm, and (2) contained more than a negligible amount of aloe ingredients.

99. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it (1) was pure, understood to mean most or all of its ingredients were (a) not significantly altered from their natural state before they were combined to make the Product and/or (b) not capable of causing harm, and (2) contained more than a negligible amount of aloe ingredients, and he relied on

Defendant's skill and judgment to select or furnish such a suitable product.

### Negligent Misrepresentation

100. Defendant had a duty to truthfully represent the Product, which it breached.

101. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, the industry leader in shaving products with the best-selling Gillette brand.

102. These representations and omissions went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first that it has been known for.

103. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

104. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

105. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

### Fraud

106. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it (1) was pure, understood to mean most or all of its ingredients were (a) not significantly altered from their natural state before they were combined to make the Product and/or (b) not capable of causing harm, and (2) contained more than a negligible amount of aloe ingredients.

107. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

Unjust Enrichment

108. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   August 20, 2022

                                                Respectfully submitted,

                                                /s/Spencer Sheehan

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

Case 3:22-cv-01949-DWD Document 1 Filed 08/19/22 Page 15 of 15 Page ID #15