IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GREGORY TAYLOR, individually and on behalf of all others similarly situated,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| vs. ) ) | Case No. 22-cv-1949-DWD |
| **PROCTER & GAMBLE COMPANY,** ) ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Gregory Taylor[1] brings this putative class action against Defendant Procter & Gamble Company[2] for the alleged deceptive and misleading labeling of its "Pure" shave cream with aloe marketed under Defendant's Gillette brand. Plaintiff seeks monetary damages and injunctive relief for unfair business practices and deceptive advertising in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.* ("ICFA") and similar state consumer fraud acts. Plaintiff also asserts claims for breach of express and implied warranties, and the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, along with negligent misrepresentation, fraud, and unjust enrichment.

---

[1] Plaintiff is a citizen of Illinois (Doc. 1, ¶ 52).
[2] Defendant is an Ohio corporation with its principal place of business in Ohio (Doc. 1, ¶ 53). Accordingly, Defendant is a citizen of Ohio for purposes of determining CAFA jurisdiction, and the parties are minimally diverse. *See* 28 U.S.C. § 1332(d)(2).

1

Now before the Court is Defendant's motion to dismiss (Doc. 7). Defendant seeks to dismiss Plaintiff's complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 7, Doc. 8). Plaintiff opposes the Motion (Doc. 14). Defendant submitted a reply brief (Doc. 15) and supplemental case law (Docs. 20, 22).

## Background

Plaintiff alleges the following facts, which for the purposes of this motion are taken as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Defendant manufactures, labels, markets, and sells the "Pure by Gillette" shave cream with aloe (the "Product"). Between February and April 2022, Plaintiff purchased the Product from a third-party on one or more occasions in Cahokia, Illinois (Doc. 1, ¶ 59). The Product's front labeling includes the words "PURE", "Free From Alcohol, Dyes, Parabens, Sulfates", "0%" and "With Aloe." (Doc. 1, ¶ 2). Images of the front of the Product bottle and the Product's exterior packaging are shown below:



2

(Doc. 1, ¶ 1; Doc. 8, pp. 5-6). Plaintiff claims the Product's labeling contains at least two false or misleading representations.

The first alleged misrepresentation concerns Defendant's use of the word "PURE." Plaintiff alleges that a reasonable consumer would understand the label's use of the word "PURE" to mean that the Product's ingredients "are not significantly altered from their original or natural state and are not harmful in anyway." (Doc. 1, ¶ 4) (internal markings omitted). However, Plaintiff argues that the Product's use of the word "PURE" is misleading because at least ten of the fourteen ingredients in the Product are not "pure" because they have been significantly altered from their original or natural state (Doc. 1, ¶ 9) or are toxic and harmful (Doc. 1, ¶¶ 19, 22, 27).

As shown on the Product's back labeling, the Product contains the following ingredients: water/EAU, palmitic acid, stearic acid, glycerin, coconut acid, potassium hydroxide, triethanolamine, fragrance/parfum, phenoxyethanol, sodium hydroxide, hydroxypropyl methylcellulose, menthol, aloe barbadensis leaf juice, and mentha piperita (peppermint) oil (Doc. 1, ¶ 9). Plaintiff contends that palmitic acid, stearic acid, glycerol, and coconut acid are not pure because they are significantly altered from their original or natural state through the chemical processes of saponification, hydrogenolysis or hydrolysis (Doc. 1, ¶¶ 10-12, 15-16).[3] Plaintiff further alleges that potassium hydroxide, triethanolamine, fragrance, sodium hydroxide, and hydroxypropyl methylcellulose are

---

[3] Plaintiff defines "saponification" as a "chemical reaction involving the conversion of fats, oils, and lipids by heat"; "hydrogenolysis" as a "chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen", and "hydrolysis" as "a chemical process in which a molecule of water is added to a substance causing it to split" (Doc. 1, ¶¶ 10-12, 15-16).

3

not pure because they do not exist in a natural state or are made from synthetic sources (Doc. 1, ¶¶ 17, 20, 24, 30).  Finally, Plaintiff alleges that phenoxyethanol, potassium hydroxide, and triethanolamine are not pure because they are toxic or have harmful effects on the body (Doc. 1, ¶¶ 19, 22, 27).

The second alleged misrepresentation concerns the amount of aloe contained in the Product (Doc. 1, ¶ 35).  Plaintiff alleges that the Product's labeling of "with aloe" is misleading because the Product contains only a *de minimis* amount of aloe ingredients relative to the remaining ingredients, when reasonable consumers would expect the Product to contain a non-*de minimis* amount of aloe ingredients (Doc. 1, ¶¶ 33-36).

Plaintiff alleges that he was damaged when he paid a premium for the Product, believing it to (1) contain ingredients which were "not significantly altered from their natural state before they were combined to make the Product and/or not capable of causing harm" and (2) contain more than a negligible amount of aloe vera (Doc. 1, ¶¶ 60-61). Plaintiff claims he would not have purchased the Product if he knew the representations and omissions were false and misleading, or he would have paid less for it (Doc. 1, ¶ 64).

## Discussion

Defendant seeks to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).  Defendant argues that Plaintiff failed to allege any facts plausibly suggesting a reasonable consumer would be misled by the Product's label when it is read in its entirety (Doc. 8).  Defendant also challenges Plaintiff's Article III standing to obtain an injunction.

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A Fed. R. Civ. P. 12(b)(1) motion challenges federal jurisdiction, including Article III standing, and the party invoking jurisdiction bears the burden of establishing the elements necessary for standing. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021); *Int'l Union of Operating Engineers, Loc. 139, AFL-CIO v. Daley*, 983 F.3d 287, 294 (7th Cir. 2020). Under Rule 12(b)(1), when a defendant facially attacks standing, the Court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).

**A. Illinois Consumer Fraud Act**

Defendant moves to dismiss Plaintiff's consumer fraud claims under Rule 12(b)(6). Plaintiff's consumer fraud claims arise under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). The ICFA "protects consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Vanzant v. Hill's Pet*

5

*Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). Deceptive or unfair practices include any misrepresentation or the concealment, suppression, or omission of any material fact." 815 Ill. Comp. Stat. Ann. 505/2; *Vanzant*, 934 F.3d at 736.

To survive a motion to dismiss under the ICFA, Plaintiff must plausibly allege: "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002)). To show that an act was deceptive, a plaintiff must allege that a reasonable consumer would be deceived by the defendant's representations or omissions. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020). This standard "requires a probability that a significant portion of the general consuming public or of target consumers, acting reasonably in the circumstances, could be misled." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020).

The reasonable consumer standard requires a "practical and fact-intensive approach to consumer behavior." *Bell*, 982 F.3d at 478. Thus, how reasonable consumers would interpret an ambiguous label is typically a question of fact that should not be decided on the pleadings. *See id.* at 483 (finding that the phrase "100% Grated Parmesan Cheese" was deceptive in the sense that reasonable consumers could be misled to believe that the product contained only cheese and not additives). However, "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell,* at 477; *see also*

*Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158–59 (N.D. Ill. 2022); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001)) ("a court may dismiss the complaint if the challenged statement was not misleading as a matter of law.").

Here, Plaintiff alleges that the Product's use of the word "PURE" represents that the Product contains ingredients which are "not significantly altered from their natural state before they were combined to make the Product" and/or are "not capable of causing harm." (Doc. 1, ¶ 60). Defendant argues that this definition is fanciful when contextualized by the Product as a whole and the label's other statements which emphasize that the Product is "Free From Alcohol, Dyes, Parabens, [and] Sulfates." Defendant further argues that Plaintiff's definition of "pure" is not plausible because it wrongfully conflates the word pure with phrases like "all natural" or "free from any processed ingredient." (Doc. 8, pp. 7-8). Indeed, Plaintiff's definition encompasses ingredients in "their natural state" despite the absence of the word "natural" from the Product's label.

Purity and all-natural consumer fraud claims appear to share some similarities, particularly when a product contains both representations. *See, e.g., Pecanha v. The Hain Celestial Grp., Inc.*, No. 17-CV-04517-EMC, 2018 WL 534299, at *2–3 (N.D. Cal. Jan. 24, 2018) (The distinction between 'Pure Natural' and '100% natural' is not as sharp as Defendants contend."); *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *9 (N.D. Cal. Dec. 10, 2013) (finding it plausible that a reasonable consumer would be misled into believing that "pure & natural" diapers "contained no non-natural

7

ingredients."). Further, district courts routinely find that a product's use of the term "natural" is plausibly misleading when a product contains synthetic ingredients. *See, e.g., Przybylak v. Bissell Better Life LLC*, No. CV 19-2038 PA (GJSX), 2019 WL 8060076, at *6 (C.D. Cal. July 19, 2019) ("[T]he fact that a word like 'naturally' is next to an adjective like 'nourishing' or 'grease-kicking' does not preclude a reasonable consumer from believing that the product as a whole does not contain synthetic ingredients."); *York v. Andalou Nats., Inc.*, No. 16-CV-894-SMY-DGW, 2016 WL 7157555 (S.D. Ill. Dec. 8, 2016); *Jou*, 2013 WL 6491158, at *9 (collecting cases); *but see Mustakis v. Chattem, Inc.*, No. 20CV5895GRBAYS, 2022 WL 714095, at *3 (E.D.N.Y. Mar. 9, 2022) (finding it implausible that a reasonable consumer would be misled into believing an "antidandruff shampoo" contained no synthetic ingredients despite using the word "Naturals" on the bottle).

However, "'[p]ure' and 'natural' are obviously different terms." *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, No. 18-CV-06664-BLF, 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020); *see also Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) (distinguishing between representations that a product is "pure" and a representation that a product is "natural"). Indeed, Merriam-Webster defines "pure" as, *inter alia*, "unmixed with any other matter," "free from dust, dirt, or taint," "free from what vitiates, weakens, or pollutes," and "containing nothing that does not properly belong." Pure, Merriam-Webster, https://www.merriam-webster.com/dictionary/pure (last visited July 6, 2023). However, "[n]atural" is defined as, *inter alia*, "being in accordance with or determined by nature", "having or constituting a classification based on features existing in nature", "occurring in conformity with the ordinary course of nature," "growing

8

without human care", "not cultivated", "existing in or produced by nature: not artificial", "relating to or being natural food", "closely resembling an original: true to nature", "having a form or appearance found in nature."  Natural, Merriam-Webster, https://www.merriam-webster.com/dictionary/natural (last visited July 6, 2023).

Of the few cases that address stand-alone "pure" claims, district courts have found it plausible that reasonable consumers would understand the word "pure" to mean the product did not contain other substances or ingredients, or would be free from other impurities/contaminants.  *See Axon*, 813 F. App'x at 705 ("Unlike 'natural', the words 'pure' and '100% natural' indicate the absolute absence of contaminants"); *Scholder v. Sioux Honey Ass'n Coop.*, No. CV 16-5369 (GRB), 2022 WL 125742 (E.D.N.Y. Jan. 13, 2022) (plaintiff plausibly alleged that a reasonable consumer viewing the "pure" honey-product label would interpret the term to mean "the final honey would be free of substances other than honey."); *Berke v. Whole Foods Mkt., Inc.*, No. CV 19-7471 PSG (KSX), 2020 WL 5802370, at *13 (C.D. Cal. Sept. 18, 2020) (finding it plausible that a reasonable consumer would understand the "pure" and purity statements on bottled water to mean the water contained no other substance, even those which are naturally occurring); *Tran v. Sioux Honey Ass'n, Coop.*, No. 8:17-CV-110-JLS-JCGX, 2018 WL 10612686 (C.D. Cal. Aug. 20, 2018) (finding it plausible that a reasonable consumer would understand Sioux Honey's use of the words "Pure" or "100% Pure" to mean that the honey did not contain other substances or ingredients (even in trace amounts) that is not essential to the honey, including synthetic substances such as glyphosate).

9

However, unlike the cosmetic shave cream product here, those "pure" claims primarily concerned food products meant for consumption, or products containing solitary ingredients. Thus, as an initial matter, to accept Plaintiff's assumption that "pure" in this context means the Product only contains unaltered ingredients in their natural state, it is unclear what form(s) Plaintiff, or any reasonable consumer, could have expected these ingredients to take to ultimately result in the functional shave cream Plaintiff purchased. *See, e.g.*, *Elder v. Bimbo Bakeries USA, Inc.*, No. 3:21-CV-637-DWD, 2022 WL 816631 (S.D. Ill. Mar. 17, 2022), at *2 ("The most literal interpretation of this ['All Butter Loaf Cake'] label is that the entire cake is made purely of butter. Clearly, that interpretation is unreasonable."); *Ledezma v. Upfield US Inc.*, No. 22 C 1618, 2022 WL 16553039, at *4 (N.D. Ill. Oct. 31, 2022) (rejecting argument that a vegetable oil spread would only contain "'natural ingredients' that 'resemble their original form'" because "[i]t would be unreasonable to expect only natural ingredients in something close to their original form for a product that announces itself as (and that consumers know is) a vegetable oil spread); *Mustakis*, 2022 WL 714095, at *3 (finding it implausible that a reasonable consumer would be misled into believing an "antidandruff shampoo" contained no synthetic ingredients despite using the word "Naturals" on the bottle).

The Court finds that the Product here is comparable to products in *Axon* and *Mustakis*. In those cases, the alleged misrepresentation, "natural", appeared in the Product's brand name, *i.e.* "Florida's Natural" and "Selsun blue Naturals", but the products did not make a separate representation that the it was "natural" or "all-natural." *See Axon*, 813 F. App'x at 705; *Mustakis*, 2022 WL 714095, at *3. Similarly, here, the shave

10

cream's name is "Pure by Gillette." This differs from the other "pure" products cited above because those products all made purity representations which were separate from the products' names. Accordingly, the Court is not persuaded that Plaintiff has sufficiently alleged that a reasonable consumer would understand "pure" in this context to mean the shave cream Product contains unaltered or "not significantly altered" ingredients, opposed to containing ingredients that are free from other impurities or contaminants not essential to the product. *See Axon*, 813 F. App'x at 705 (understanding pure to indicate the absolute absence of contaminants); *Tran*, 2018 WL 10612686 (finding it plausible that a reasonable consumer would understand pure to mean the product did not contain other ingredients not essential to the product).

However, Plaintiff also asserts that reasonable consumers would understand the Product's name "pure" to mean that the Product, or its ingredients, are not capable of causing harm. This allegation is more plausible. *See, e.g.*, *Axon*, 813 F. App'x at 705 (finding "pure" to mean "the absolute absence of contaminants"). Here, Plaintiff suggests that the Product is not pure because it contains three ingredients which are toxic or capable of causing harm to the body. Specifically, Plaintiff claims that:

1. Potassium hydroxide "is classified by federal regulations as a highly toxic and hazardous synthetic compound that, even with short exposure, could cause serious temporary residual injury," (Doc. 1, ¶ 19),

2. Triethanolamine "has been shown to cause skin irritation, inflammation and other harmful effects on the body." (Doc. 1, ¶ 22), and

3. Phenoxyethanol "is toxic to the kidneys, liver, and nervous system." (Doc. 1, ¶ 27).

Notwithstanding the general lack of factual support for these conclusions, Plaintiff has not alleged that a reasonable consumer would believe the presence of these specific ingredients rendered the entire Product harmful in the same way the ingredients are alleged to be harmful in isolation. Indeed, Plaintiff has not alleged that he was harmed by the Product, or that the Product was capable of causing harm. Instead, Plaintiff's claims are based in consumer fraud and do not suggest a negligence claim premised on an alleged harmful product. Thus, even if a reasonable consumer would understand the definition of "pure" to mean that the Product or its ingredients, alone or in combination, were not capable of causing harm, Plaintiff has not sufficiently alleged that the Product was harmful, or that the alleged harmful ingredients existed in such quantities to render the entire Product harmful. Therefore, even understanding "pure" to mean "not capable of causing harm" Plaintiff has not sufficiently alleged that this statement is false, deceptive, or misleading.

Finally, Plaintiff's "with aloe" argument is easily rejected. Plaintiff avers that the Product's labeling stating "with aloe" is misleading because it only contained a *de minimis* amount of aloe ingredients. As numerous courts have found, reasonable consumers understand that a product "made with" an ingredient does not mean that product was made *exclusively* from that ingredient or that the product was claiming to contain a specific amount of that ingredient in the product. *See, e.g.*, *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 932 (7th Cir. 2021) (collecting cases) (holding that "made with fresh, regional ingredients" is not misleading, unlike in *Bell*, in part, because the "packaging did not represent that it was made with 100% fresh regional ingredients"); *Henderson v.*

*Gruma Corp.*, No. CV 10-04173 AHM AJWX, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) ("The phrase 'With Garden Vegetables' ... does not claim a specific *amount* of vegetables in the product, but rather speaks to their presence in the product, which is not misleading.") (emphasis in original); *Reyes v. Crystal Farms Refrigerated Distribution Co.*, No. 18CV2250NGGRML, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) ("made with real butter" was not misleading because product contains butter).

Similarly, here, Plaintiff alleges that the Product's labeling of "with aloe" is misleading because the Product contains only a *de minimis* amount of aloe ingredients relative to the remaining ingredients, when reasonable consumers would expect the Product to contain a non-*de minimis* amount of aloe ingredients (Doc. 1, ¶¶ 33-36). As the plethora of district court decisions make clear, "made with" implies that the ingredient is a component of the Product along with other ingredients. *See Schneider v. Mott's LLP*, No. 3:21-CV-1251-NJR, 2022 WL 4314207, at *5 (S.D. Ill. Sept. 19, 2022) (finding that "'made with' implies that 100% real fruit is a component of the Applesauce *along with other ingredients*, 'made from' implies the Applesauce is comprise of 100% real fruit' *and nothing else.*") (emphasis in original); *Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. CV1701875MWFMRWX, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) ("made with real fruit and vegetable juice" was not misleading when fruit snacks were made with fruit and vegetable juice). Thus, Plaintiff has failed to plausibly allege that the statement "with aloe" was false or misleading, or would have otherwise misled a reasonable consumer.

For these reasons, Plaintiff's consumer fraud claims must be dismissed, albeit without prejudice. Likewise, the claims asserted on the proposed multi-state class claims

will also be dismissed, without prejudice. These claims are premised on state consumer fraud acts in Alaska, Iowa, Kansas, Kentucky, Utah, West Virginia, and Wyoming, which have all enacted consumer fraud statutes similar to the ICFA (Doc. 1, p. 13). Further, the members of the proposed class are alleged to have been harmed in the same way as Plaintiff (Doc. 1, p. 13). Accordingly, for the same reasons that Plaintiff's ICFA claims fail, these claims will also be dismissed.

### B. Claims for breaches of warranty and Magnuson Moss Warranty Act, negligence misrepresentation, fraud, and unjust enrichment

Plaintiff's remaining claims are for breach of express and implied warranties, violation of the Magnuson Moss Warranty Act, negligent misrepresentation, common law fraud, and unjust enrichment. The Court can make short order of Plaintiff's state-law and Magnuson Moss Warranty Act claims because they are based on the same theory of deception as that alleged in her ICFA claim, *i.e.*, that the Product's packaging is false, deceptive, and misleading. See *DeMaso v. Walmart Inc.*, No. 21-CV-06334, 2023 WL 1800208 (N.D. Ill. Feb. 7, 2023) (a finding that a reasonable consumer would not be misled for the purposes of ICFA applies to warranty claims as well). Every claim in Plaintiff's complaint requires proof of a deceptive act or practices – the alleged misrepresentations of the Product's "PURE" labeling and aloe content– so the entire complaint rises or falls with that analysis. Simply, without a deception, Plaintiff's remaining claims cannot succeed.

The Court begins with the warranty claims. An express warranty claim requires that a seller: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3)

which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). A breach of the implied warranty of merchantability occurs if the product is not "fit for the ordinary purposes for which such goods are used." *See* 810 Ill. Comp. Stat. Ann. 5/2-314(2)(c). Relatedly, a "consumer's ability to state a claim under the [Magnuson Moss Warranty] Act 'is dependent on the existence of an underlying viable state-law warranty claim.'" *See Lederman v. Hershey Co.*, No. 21-CV-4528, 2022 WL 3573034, at *6 (N.D. Ill. Aug. 19, 2022) (quoting *Schiesser v. Ford Motor Co.*, No. 16-CV-00730, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016)).

The Court's finding that Plaintiff failed to plausibly allege a false or misleading statement under the ICFA also applies to Plaintiff's warranty claims. *See DeMaso*, 2023 WL 1800208 (explaining that the conclusion that the product's labeling was not false, misleading, or deceptive as a matter of law was also fatal to the claims for breach of express and implied warranties); *Zahora v. Orgain LLC*, No. 21 C 705, 2021 WL 5140504, at *5 (N.D. Ill. Nov. 4, 2021) (collecting cases). And without a viable state-law claim, his claim under the Magnuson Moss Warranty Act also fails. *See Lederman*, 2022 WL 3573034.

The negligent misrepresentation and common-law fraud claims suffer from the same problem. A negligent misrepresentation claim requires the plaintiff to plead and prove: "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining truth of the statement; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to

communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326 (2006). Similarly, a common-law fraud claim requires Plaintiff to plead: (1) the defendant made a false statement of material fact, (2) the defendant knew that the statement was false, (3) the defendant intended that the statement induce the plaintiff to act, (4) the plaintiff did act in reliance on the statement, and (5) the plaintiff was damaged from her reliance on the statement. *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996). Thus, without a false or deceptive statement, these claims are insufficiently pled. *See* Newman v. Metro. Life Ins. Co., 885 F.3d 992, 1003 (7th Cir. 2018); *Sneed v. Ferrero U.S.A., Inc.*, No. 22 CV 1183, 2023 WL 2019049 (N.D. Ill. Feb. 15, 2023)

Finally, "[u]nder Illinois law, unjust enrichment is not a separate cause of action. Rather, it's a condition brought about by fraud or other unlawful conduct." *Vanzant*, 934 F.3d at 739 (internal citation omitted). "Because all of Plaintiff's other claims fail, so too does [his] unjust enrichment claim." *Lederman*, 2022 WL 3573034.

In sum, because Plaintiff has not sufficiently alleged that a reasonable consumer would be misled by the Product's labeling, the remaining claims must also be dismissed.

### C. Injunctive Relief

Finally, Defendant argues that Plaintiff lacks standing to seek injunctive relief. However, because the complaint has failed to state a claim, the Court does not need to address this argument. *See, Sneed*, 2023 WL 2019049; *Lederman*, 2022 WL 3573034. Without any viable claim for relief, "there are no claims for which [Plaintiff] can seek injunctive relief as a remedy." *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022).

### D. Leave to Amend

Defendant asks the Court to dismiss all of Plaintiff's claims with prejudice, and without leave to amend. This lawsuit is one of hundreds of lawsuits filed by Plaintiff's counsel alleging misleading or deceptive product labeling. *See, e.g.*, *Burns v. Gen. Mills Sales, Inc.*, No. 3:21-CV-1099-DWD, 2022 WL 3908783 (S.D. Ill. Aug. 30, 2022), at n.6 (S.D. Ill. Aug. 30, 2022) (citing *Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89 (S.D.N.Y. 2021)). Defendant supplied supplemental authority where district courts throughout the country have dismissed consumer fraud claims brought by Plaintiff's counsel's clients with prejudice (Docs. 20, 22) (citing *Guzman v. Walmart Inc.*, No. 22-CV-3465, 2023 WL 4535903 (N.D. Ill. May 15, 2023); *Lesorgen v. Mondelēz Global, LLC*, No. 3:22-cv-50375, Dkt. No. 29 (N.D. Ill. May 19, 2023); *see also Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154 (S.D.N.Y. 2021); *Pichardo v. Only What You Need, Inc.*, No. 20-CV-493 (VEC), 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020).

Indeed, the Court is aware of the recent admonishments Plaintiff's counsel has received by district courts throughout the country. *See, e.g.*, *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *19 (S.D.N.Y. Mar. 18, 2022) ("The Court takes a moment to caution Plaintiff's counsel once again that Plaintiff may only file a second amended complaint where she has a *good faith basis* to do so. As must be clear to Plaintiff's counsel based on the Court's citations in this Opinion & Order, the Court is well aware that Plaintiff's counsel routinely files cases such as these, which bring identical claims, and that they are just as routinely dismissed for failure to state a claim. This Court will not hesitate to follow the example of a growing number of its sister courts and dismiss

Plaintiff's claims with prejudice should Plaintiff present this Court with the same allegations in a second amended complaint."); *Gardner v. Ferrara Candy Co.*, No. 22-CV-1272, at Doc. 28 (N.D. Ill. Apr. 6, 2023) (collecting cases) ("This Court recently granted a motion to dismiss filed by Defendant []. While reviewing the caselaw in this area, this Court could not help but notice a few common threads. Many of the cases were filed by the same Plaintiff's attorney, Spencer Sheehan. Many of the complaints made the same type of allegations of consumer fraud. And many of the complaints suffered the same fate, exiting the courthouse on motions to dismiss.  By the look of things, attorney Sheehan is filing consumer fraud cases over and over again, seemingly covering just about every aisle in the grocery store, without much success. . . . Given the apparent track record, the Court has questions about whether attorney Sheehan's filings comply with the Federal Rules."); *see also Warren v. Coca-Cola Co.*, No. 22-CV-6907 (CS), 2023 WL 3055196, at *11 (S.D.N.Y. Apr. 21, 2023));

      Nevertheless, "[o]rdinarily … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [the] complaint before the entire action is dismissed."  *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) (collecting cases). Further, it is within the sound discretion of the district court to grant or deny leave to amend, and leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, the Court will permit Plaintiff an opportunity to file an amended complaint, considering he has a good faith basis to do so. However, Plaintiff's counsel is reminded of his obligations under Fed. R. Civ. P. 11.

Should Plaintiff's counsel fail to comply with these obligations the Court will consider following the growing number of district courts who have found it appropriate to dismiss Plaintiff's claims with prejudice on this basis.

### Conclusion

For these reasons, Defendant's Motion to Dismiss (Doc. 7) is **GRANTED**. Plaintiff's Complaint (Doc. 1) is **DISMISSED, without prejudice**. Plaintiff is granted leave to file an amended complaint by **August 31, 2023**. Failure to file an amended complaint by this date will result in dismissal of this case with prejudice.

**SO ORDERED.**

Dated: August 17, 2023

_____
DAVID W. DUGAN
United States District Judge